**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BRIAN BABINSKI, and PATRICK KENNEDY, individually and on behalf of all others similarly situated, | §<br>§<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| | § | Civil Action No. 4:25-cv-03381 |
| v. | §<br>§ | |
| SIEMENS ENERGY, INC., THE BOARD OF DIRECTORS OF SIEMENS ENERGY, INC., THE SIEMENS ENERGY, INC. ADMINISTRATIVE COMMITTEE, THE SIEMENS ENERGY, INC. INVESTMENT COMMITTEE and JOHN DOES 1-40, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **ORAL ARGUMENT REQUESTED** |
| Defendants. | § | |

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Siemens

Energy, Inc., the Board of Directors of Siemens Energy, Inc., the Siemens Energy, Inc.

Administrative Committee, and the Siemens Energy, Inc. Investment Committee, by and through

their counsel, hereby move this Court to dismiss the First Amended Complaint (Dkt. No. 24,

"FAC") of plaintiffs Brian Babinski and Patrick Kennedy ("Plaintiffs"). As set out in detail herein,

Plaintiffs' allegations in the FAC fail to state a claim pursuant to the Employee Retirement Income

Security Act of 1974 ("ERISA"), and Plaintiffs' FAC fails to establish that this Court has subject-

matter jurisdiction over certain of the claims.

**TABLE OF CONTENTS**

**Page**

I.      The Plan ..................................................................................................................... 3

II.     The Plan's Allocation of Forfeited Contributions ............................................................ 3

III.    The Plan's Recordkeeper and Recordkeeping Fees........................................................... 4

IV.     The Plan's Managed Account Service................................................................................ 4

V.      The Plaintiffs..................................................................................................................... 5

I.      Plaintiffs Do Not Allege a Plausible Claim for Relief Relating to the Plan's Use of Forfeitures (Counts II and III)......................................................................................... 6

        a.      Plaintiffs fail to state a claim for breach of the duty of loyalty (Count II). ........................................................................................................ 6

        b.      Plaintiffs do not state an anti-inurement claim (Count III)...................... 11

II.     Plaintiffs fail to plausibly allege a prohibited transaction with respect to the Plan's recordkeeper (Count I). ..................................................................................................... 12

III.    Plaintiffs fail to state a claim against SEI ........................................................................ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*,
  953 F.2d 587 (11th Cir. 1992) ................................................................................11

*Armenta v. WillScot Mobile Mini Holdings Corp.*,
  2025 WL 2645518 (D. Ariz. Sept. 15, 2025)............................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................5

*Barragan v. Honeywell Int'l*,
  2025 WL 2383652 (D.N.J. Aug. 18, 2025) ..........................................................7, 10

*Barragan v. Honeywell Int'l, Inc.*,
  2024 WL 5165330 (D.N.J. Dec. 19, 2024)..............................................................11

*Baumeister v. Exelon Corp.*,
  2023 WL 6388064 (N.D. Ill. Sept. 29, 2023) .........................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................5, 14

*Bozzini v. Ferguson Enters.*,
  2025 WL 1547617 (N.D. Cal. May 29, 2025)...........................................................7

*Brown v. Peco Foods, Inc.*,
  2025 WL 3210857 (S.D. Miss. Nov. 14, 2025)......................................................7, 8

*Cain v. Siemens Corp.*,
  2025 WL 2172684 (D.N.J. July 31, 2025)................................................................7

*Cano v. Home Depot, Inc.*,
  2025 WL 2589567 (N.D. Ga. Aug. 26, 2025) .......................................................7, 11

*Cicalese v. Univ. of Tex. Med. Branch*,
  456 F. Supp. 3d 859 (S.D. Tex. 2020) ....................................................................15

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ....................................................................................2

*Conkright v. Frommert*,
  559 U.S. 506 (2010)..................................................................................................9

*Cuvillier v. Taylor*,
  503 F.3d 397 (5th Cir. 2007) ....................................................................................5

*D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins.*,
    88 F.4th 602 (5th Cir. 2023) ................................................................................13, 14

*Del Bosque v. Coca-Cola Sw. Beverages LLC*,
    2025 WL 3171326 (N.D. Tex. Nov. 13, 2025).............................................7, 8, 9, 10

*Dimou v. Thermo Fisher Sci. Inc.*,
    2024 WL 4508450 (S.D. Cal. Sept. 19, 2024)...................................................11, 12

*Dimou v. Thermo Fisher Sci. Inc.*,
    2025 WL 2611240 (S.D. Cal. Sept. 9, 2025)............................................................7

*Dionicio v. U.S. Bancorp.*,
    2024 WL 1216519 (D. Minn. Mar. 21, 2024) ........................................................16

*Estay v. Ochsner Clinic Found.*,
    2025 WL 2644782 (E.D. La. Sept. 15, 2025).......................................................7, 8

*Ferrer v. Chevron Corp.*,
    484 F.3d 776 (5th Cir. 2007) .................................................................................15

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)................................................................................................6

*Fumich v. Novo Nordisk Inc.*,
    2025 WL 2399134 (D.N.J. Aug. 19, 2025) .................................................7, 10, 11

*Great Lakes Dredge & Dock Co. LLC v. La. State*,
    624 F.3d 201 (5th Cir. 2010) .................................................................................14

*Hall v. Cap. One Fin. Corp.*,
    2023 WL 2333304 (E.D. Va. Mar. 1, 2023) ..........................................................16

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) .................................................................................16

*Hernandez v. AT&T Servs., Inc.*,
    2025 WL 3208360 (C.D. Cal. Nov. 14, 2025).........................................................7

*Holliday v. Xerox Corp.*,
    732 F.2d 548 (6th Cir. 1984) .................................................................................11

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)...............................................................................................12

*Hughes v. Nw. Univ.*,
    595 U.S. 170 (2022)..............................................................................................6, 9

iii

*Humphries v. Mitsubishi Chem. Am., Inc.*,
   2024 WL 4711296 (S.D.N.Y. Nov. 7, 2024) ...........................................................................3

*Hutchins v. HP Inc. ("Hutchins I")*,
   737 F. Supp. 3d 851 (N.D. Cal. 2024) ........................................................................8, 11, 12

*Hutchins v. HP Inc. ("Hutchins II")*,
   767 F. Supp. 3d 912, 921–23 (N.D. Cal. 2025) ...................................................................7, 10

*Hutchins v. HP Inc.*,
   No. 25-826 (9th Cir. filed Jul. 9, 2025) ..............................................................................8, 10

*Kopp v. Klein*,
   894 F.3d 214 (5th Cir. 2018) ............................................................................................14

*LeBoeuf v. Entergy Corp.*,
   2025 WL 1262414 (5th Cir. May 1, 2025) .......................................................................17, 18

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)........................................................................................................9, 15

*Madrigal v. Kaiser Found. Health Plan, Inc.*,
   2025 WL 1299002 (C.D. Cal. May 2, 2025) .....................................................................7, 11

*Mass. Mut. Life Ins. v. Russell*,
   473 U.S. 134 (1985)............................................................................................................9

*Matula v. Wells Fargo & Co.*,
   2025 WL 1707878 (D. Minn. June 18, 2025), *appeal filed*, No. 25-2441 (8th
   Cir. July 22, 2025) .......................................................................................................7, 11

*McIver v. Metro. Life Ins. Co.*,
   2022 WL 3013199 (C.D. Cal. May 23, 2022) .......................................................................18

*McWashington v. Nordstrom, Inc.*,
   2025 WL 1736765 (W.D. Wash. June 23, 2025)......................................................................7

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ..............................................................................................16

*Meznarich v. Morgan Waldron Ins. Mgmt.*,
   2012 WL 2367268 (N.D. Ohio Jun. 21, 2012) .......................................................................17

*Middleton v. Amentum Parent Holdings, LLC*,
   2025 WL 2229959 (D. Kan. Aug. 5, 2025) ...................................................................7, 11, 12

*Naylor v. BAE Sys., Inc.*,
   2024 WL 4112322 (E.D. Va. Sept. 5, 2024).......................................................................7, 11

iv

*Nykiel v. Smith & Nephew, Inc.*,
 2025 WL 2347549 (D. Mass. July 11, 2025)..............................................................7

*Pegram v. Herdrich*,
 530 U.S. 211 (2000)..................................................................................................17

*Polanco v. WPP Grp. USA, Inc.*,
 2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025) ............................................................7

*Quigley v. ConocoPhillips Co.*,
 756 F. Supp. 3d 479 (S.D. Tex. 2024) ......................................................................6

*Rajpurohit v. Becton, Dickinson, & Co.*,
 2024 WL 1477652 (D.N.J. Apr. 5, 2024) ...............................................................18

*Ramos v. Banner Health*,
 1 F.4th 769 (10th Cir. 2021) ...................................................................................13

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
 780 F. Supp. 3d 870 (D. Ariz. 2025) ...................................................................7, 11

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
 *Morgan Stanley Inv. Mgmt. Inc.*,
 712 F.3d 705 (2d Cir. 2013)......................................................................................6

*Steen v. Sonoco Prods. Co.*,
 2025 WL 2420725 (D.S.C. June 4, 2025).............................................................7, 11

*Sweda v. Univ. of Penn.*,
 923 F.3d 320 (3d Cir. 2019)...............................................................................13, 14

*Terraza v. Safeway Inc.*,
 241 F. Supp. 3d 1057 (N.D. Cal. 2017) ....................................................................3

*Wagner v. Hess Corp.*,
 2025 WL 888428 (N.D. Tex. Mar. 21, 2025) ..........................................................16

*Winfield v. Citibank, N.A.*,
 842 F. Supp. 2d 560 (S.D.N.Y. 2012)........................................................................3

*Wright v. JPMorgan Chase & Co.*,
 2025 WL 1683642 (C.D. Cal. June 13, 2025), *appeal filed,* No. 25.4235 (9th
 Cir. July 9, 2025) .................................................................7, 8, 9, 10, 11, 12

**Statutes**

ERISA, 29 U.S.C. § 1002(14)(B) ........................................................................................13

ERISA, 29 U.S.C. § 1002(2)(A)............................................................................................3

ERISA, 29 U.S.C. § 1002(34) ................................................................................................3

ERISA, 29 U.S.C. § 1106(a).................................................................................12, 13, 14, 15

**INTRODUCTION**

Defendant Siemens Energy, Inc. ("**SEI**") provides its employees with generous benefits, including the defined contribution retirement plan at issue here: the Siemens Energy, Inc. Savings Plan (the "**Plan**"). Eligible employees may make tax-advantaged contributions to the Plan, and SEI pays matching contributions for the benefit of non-union participants. The Plan complies with the law. Plaintiffs' three challenges to the Plan lack legal and regulatory foundation, and the First Amended Complaint ("FAC") (ECF No. 24) should be dismissed in its entirety.

*First,* Plaintiffs allege that SEI, its Board of Directors, the Siemens Energy, Inc. Administrative Committee (the "**Administrative Committee**"), and the Siemens Energy, Inc. Benefits Committee (the "**Benefits Committee**") allowed the Plan to use unvested, forfeited employer 401(k) contributions ("**forfeitures**") to pay employer matching contributions instead of Plan expenses and thereby supposedly violated their fiduciary duty of loyalty under ERISA. As the vast majority of courts to consider this theory—including one in the Northern District of Texas and the other two in the Fifth Circuit to have addressed it—have held, and as the DOL has agreed in a recent *amicus* submission, the allegation fails to state a claim for a host of reasons, including that this theory: (1) clashes with nearly four decades of settled rules regarding defined contribution plans subject to ERISA; (2) stretches ERISA beyond its bounds by improperly imposing a requirement for employers to maximize employee benefits; and (3) is not founded on any plausible allegations of disloyal conduct, particularly given that Defendants utilized the forfeitures to benefit Plan participants.

*Second,* Plaintiffs' claim that the same Defendants' use of forfeitures violated ERISA's anti-inurement provision (which provides that Plan assets may not "inure" to the benefit of the employer, here SEI) fails because, as numerous courts have recognized, the forfeitures at issue never were *removed* from the Plan, a critical requirement in order to state an anti-inurement claim.

1

Rather, the forfeitures remained in the Plan, where they were used *for the benefit* of Plan participants.

**Third**, Plaintiffs' argument that the Plan engaged in a prohibited transaction somehow by hiring its recordkeeper fails for several reasons. First, the prohibited transaction rule on which Plaintiffs rely applies only to prohibit certain transactions between the Plan and a "party in interest" to the Plan, but as the Fifth Circuit has recognized, when a plan hires a new service provider (as Defendants here are alleged to have done), it is not a "party in interest." Second, the prohibited transaction rule does not apply to essential services, such as recordkeeping—otherwise, contrary to ERISA, plan fiduciaries would face exposure every time they contracted for necessary services. Lastly, Plaintiffs lack standing for this claim because they fail to allege facts of, or that support, any loss.

**Finally**, Plaintiffs fail to state a claim against SEI because Plaintiffs' ERISA claims require that SEI be a fiduciary, which it is not.

For all of the above reasons, the Court should grant Defendants' motion to dismiss the FAC in its entirety.

## BACKGROUND

In setting forth the Background below, Defendants rely upon the allegations in the FAC (which Defendants recognize should be taken as true *solely* for purposes of this motion), documents Plaintiffs incorporated into the FAC by reference, and those documents of which this Court may take judicial notice.[1]

---

[1] Documents referred to in the FAC and central to the claims may be considered on a motion to dismiss. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Here, the FAC references and relies upon the Plan's Form 5500 filings, *i.e.*, its annual filings with the Department of Labor. *E.g.*, FAC ¶¶ 2, 7-8, 11-12, 27, 42, 47, 69, 71, 93 n.13, 96, 117. The FAC also relies upon the Plan Document that creates and governs the Plan (*id.* ¶¶ 28, 34, 37, 54-55, 65) and the Summary Plan Description ("SPD") (*id.* ¶¶ 2, 41, 53, 56, 58-64). Independently, courts routinely take judicial notice of such documents on motions to dismiss. *Winfield v. Citibank, N.A.*,

## I.      The Plan

The Plan is an individual account, defined contribution plan under ERISA, 29 U.S.C. § 1002(2)(A) and § 1002(34), sponsored by SEI "to encourage and assist eligible employees to save part of their income on a regular basis." ECF No. 21-1, Lakatos Decl., Att. A (Plan § 1.1); *see also* FAC ¶ 2. Participants can invest a portion of their compensation in the Plan each year, and non-union participants receive a matching contribution by SEI. FAC ¶¶ 58-60. In 2023, the Plan had $3.5 billion in assets and approximately 14,552 participants. *Id.* ¶¶ 8, 11. The Plan is sponsored by SEI. *Id.* ¶ 27. SEI's Board of Directors appointed a committee, the Administrative Committee, to control and manage the operation and administration of the Plan. *Id.* ¶¶ 30, 34-35. Another committee, the Benefits Committee, is responsible for selecting and monitoring the Plan's investments. *Id.* ¶ 41. The Plan offers several different kinds of investment products and services, including a diverse menu of investment options, as well as target-date funds. *See*, *e.g.*, ECF No. 21-1, Lakatos Decl., Att. B at 59, 72, and 94 (2020 Form 5500); Att. C at 61, 72 (2021 Form 5500); Att. D at 61, 73 (2022 Form 5500); Att. E at 64, 76 (2023 Form 5500).

## II.     The Plan's Allocation of Forfeited Contributions

Plan contributions consist of both employee contributions and, for non-union employees, SEI's matching contribution.[2] FAC ¶¶ 58, 60. Employees are immediately vested in their own contributions to the Plan but are not entitled to SEI contributions until completing the years of service the Plan's vesting schedule requires. *Id.* ¶¶ 61-63. Employees forfeit unvested amounts if their employment terminates before the end of the vesting period. *Id.* ¶ 64.

The Plan itself directs where such forfeited contributions should be allocated. FAC ¶ 65.

---

842 F. Supp. 2d 560, 568 n.3 (S.D.N.Y. 2012) (holding that the plan document is subject to judicial notice in ERISA cases); *Humphries v. Mitsubishi Chem. Am., Inc.*, 2024 WL 4711296, at *5 (S.D.N.Y. Nov. 7, 2024) (taking judicial notice of DOL Form 5500s); *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1067 (N.D. Cal. 2017) (taking notice of a Form 5500).

[2] All discussion of employer contributions herein refers to non-union employees.

Specifically, it provides that any forfeited amounts "***shall be used***, as soon as practicable, to pay reasonable administrative expenses of the Plan, other than such reasonable administrative expenses charged to Members' Accounts monthly or otherwise, as determined by the Company, ***or to reduce Employer Contributions***." *Id*. (emphasis added). Neither option requires fiduciaries to apply forfeitures to plan expenses *charged to participants*, and neither option permits the forfeited amounts to leave the Plan. Pursuant to the Plan, forfeitures were used to reduce the amount of new employer contributions to the Plan in each of 2020, 2021, 2022, and 2023. *Id.* ¶ 117.

### III.    The Plan's Recordkeeper and Recordkeeping Fees

Defined contribution fiduciaries routinely retain third parties to handle specific administrative tasks. One "essential" service provider is known as a "recordkeeper." FAC ¶¶ 70-71. Recordkeepers offer a wide range of administrative services for fiduciaries to choose from, including maintaining records, tracking account balances, overseeing investment elections, processing transactions, providing call center support and participant communications, and other services. *Id.* ¶¶ 71, 73. The Plan's recordkeeper is Alight Financial Solutions, LLC ("**Alight**"). *Id.* ¶ 14. Like other service providers, recordkeepers are compensated for the services they provide. Plaintiffs allege that Alight is paid a fixed fee for its recordkeeping services using direct deductions from participant accounts. FAC ¶¶ 92-93, 95.

### IV.    The Plan's Managed Account Service

For Plan participants who want assistance creating an individualized investment strategy, the Plan offers the Professional Management Program ("**PMP**"). FAC ¶ 95. Under the PMP, rather than make their own investment decisions, plan participants utilize a professional asset manager, Alight, to manage their investments for them. *Id.* ¶ 79. The PMP is voluntary; that is, only plan participants who choose to use the PMP benefit from Alight's personalized management, and only those plan participants who choose to use the PMP are charged for it. *Id.* ¶ 85. Plaintiffs allege that

4

Alight is paid a fee that is a percentage of the assets that Alight is managing for each plan participant who uses the PMP. *Id.* ¶ 95.

## V.     The Plaintiffs

Plaintiffs Brian Babinksi and Patrick Kennedy both allege that they are former employees of SEI who were participants in the Plan during the time when they were employed with SEI. FAC ¶¶ 23, 24. Plaintiffs both allege that they suffered an injury "due to the fact that Defendants failed to use forfeited Plan funds to pay Plan administrative costs." They also allege that they suffered an injury due to what they allege were excessive recordkeeping fees (including managed account fees) for services provided by Alight. *Id.*

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). While a court analyzing a motion to dismiss must accept as true all well-pleaded factual allegations in the complaint, "[a court is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The factual allegations must be sufficient to raise a Plaintiffs' right to relief above a speculative level, such that it is "plausible on its face." *Id.* at 547; *see Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

Further, as the Supreme Court instructed for ERISA fiduciary breach cases, the "'appropriate inquiry'" at the pleading stage "'will necessarily be context specific,'" requiring "due regard" for "the range of reasonable judgments a fiduciary may make based on her experience

5

and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). A plaintiff thus must "'must plausibly allege that [defendants] breached one of [several] duties, causing a loss to the . . . plan.'" *Quigley v. ConocoPhillips Co.*, 756 F. Supp. 3d 479, 485 (S.D. Tex. 2024) (quoting *Schweitzer v. Inv. Comm. of Phillips 66 Savs. Plan*, 960 F.3d 190, 195 (5th Cir. 2020)).

Strictly enforcing these pleading requirements is essential, because motions to dismiss are an "important mechanism for weeding out meritless claims." *Dudenhoeffer*, 573 U.S. at 425. The Supreme Court recognized this is especially true for ERISA fiduciaries that find themselves "between a rock and a hard place," facing litigation regardless of what decision they make. *Id.* at 424. Compounding that problem, "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous" and "elevates the possibility that 'a plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

## ARGUMENT

### I. Plaintiffs Do Not Allege a Plausible Claim for Relief Relating to the Plan's Use of Forfeitures (Counts II and III).

#### a. Plaintiffs fail to state a claim for breach of the duty of loyalty (Count II).

The vast majority of courts have rejected Plaintiffs' theory that the exercise of "choice" or "discretionary authority" to allocate forfeitures towards the company's future contributions is disloyalty. They reason that the theory: (1) contradicts government and industry-wide recognition of the proper use of forfeitures and (2) rewrites ERISA when the statute in no way requires maximizing pecuniary benefits for plan participants or that funds resulting from forfeitures pay

6

plan expenses.[3] Further, Plaintiffs make only conclusory allegations of disloyal conduct.

*First*, allocating forfeitures to contributions cannot be a fiduciary breach resulting in years of retroactive liability when the practice has long been permitted under ERISA and the Internal Revenue Code. As the court explained in *Hutchins v. HP Inc.* ("*Hutchins II*"), Plaintiffs' theory contradicts "decades of settled law," including the Treasury's "long-settled rules regarding the use of forfeitures in defined contribution plans" and its recently proposed regulations affirming that employers may use forfeitures to offset contributions. 767 F. Supp. 3d 912, 921–23 (N.D. Cal. 2025) (citing Tax Reform Act of 1986, 100 Stat. 2085, and Use of Forfeitures in Qualified

---

[3] At least 22 district courts have now dismissed effectively identical forfeiture fiduciary-breach claims, often with prejudice. These include: (1) *Hernandez v. AT&T Servs., Inc.*, 2025 WL 3208360, at *3-6 (C.D. Cal. Nov. 14, 2025) (dismissal with prejudice); (2) *Brown v. Peco Foods, Inc.*, 2025 WL 3210857, at *9 (S.D. Miss. Nov. 14, 2025); (3) *Del Bosque v. Coca-Cola Sw. Beverages LLC*, 2025 WL 3171326, at *4-5 (N.D. Tex. Nov. 13, 2025); (4) *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *3-11 (S.D.N.Y. Oct. 27, 2025) (dismissing breach of duty of loyalty claims with prejudice); (5) *Estay v. Ochsner Clinic Found.*, 2025 WL 2644782, at *2-3 (E.D. La. Sept. 15, 2025) (dismissed with prejudice as to duty loyalty); (6) *Armenta v. WillScot Mobile Mini Holdings Corp.*, 2025 WL 2645518, at *3-5 (D. Ariz. Sept. 15, 2025); (7) *Dimou v. Thermo Fisher Sci. Inc.*, 2025 WL 2611240, at *4-8 (S.D. Cal. Sept. 9, 2025) (dismissed with prejudice); (8) *Cano v. Home Depot, Inc.*, 2025 WL 2589567, at *4-6 (N.D. Ga. Aug. 26, 2025) (dismissed); (9) *Fumich v. Novo Nordisk Inc.*, 2025 WL 2399134, at *6–7 (D.N.J. Aug. 19, 2025); (10) *Barragan v. Honeywell Int'l Inc.*, 2025 WL 2383652, at *2–4 (D.N.J. Aug. 18, 2025) (dismissed with prejudice); (11) *Middleton v. Amentum Parent Holdings, LLC*, 2025 WL 2229959, at *12–15, *19 (D. Kan. Aug. 5, 2025) (dismissed claim and denied leave to amend); (12) *Cain v. Siemens Corp.*, 2025 WL 2172684, at *4–5 (D.N.J. July 31, 2025); (13) *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, at *16 (W.D. Wash. June 23, 2025) (dismissed with prejudice); (14) *Matula v. Wells Fargo & Co.*, 2025 WL 1707878, at *2, *4 (D. Minn. June 18, 2025), *appeal filed*, No. 25-2441 (8th Cir. July 22, 2025) (dismissed with prejudice); (15) *Wright v. JPMorgan Chase & Co.*, 2025 WL 1683642, at *5 (C.D. Cal. June 13, 2025), *appeal filed,* No. 25-4235 (9th Cir. July 9, 2025) (dismissed with prejudice); (16) *Steen v. Sonoco Prods. Co.*, 2025 WL 2420725, at *4–5 (D.S.C. June 4, 2025); (17) *Bozzini v. Ferguson Enters. LLC*, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025); (18) *Madrigal v. Kaiser Found. Health Plan, Inc.*, 2025 WL 1299002, at *5 (C.D. Cal. May 2, 2025); (19) *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 881 (D. Ariz. 2025) (dismissed with prejudice); (20) *Hutchins v. HP Inc. ("Hutchins II")*, 767 F. Supp. 3d 912, 921 (N.D. Cal. 2025) (dismissed with prejudice); (21) *Naylor v. BAE Sys., Inc.*, 2024 WL 4112322, at *3–7 (E.D. Va. Sept. 5, 2024); and (22) *Nykiel v. Smith & Nephew, Inc.*, 2025 WL 2347549, at *4–5 (D. Mass. July 11, 2025), *report and recommendation adopted*, 2025 WL 2347430 (D. Mass. Aug. 13, 2025) (dismissing similar prohibited-transaction claims).

Retirement Plans, 88 Fed. Reg. 12282-01 (proposed Feb. 27, 2023)). As the Northern District of Texas summed it up: "ERISA . . . authorizes the use forfeiture funds for employer contribution matching." *Coca-Cola*, 2025 WL 3171326, at \*4. *See also Brown*, 2025 WL 3210857, at \*5 (collecting supporting cases). Another court further explained, "the law allows Defendants to use forfeited funds to reduce employer contributions," and "any theory to the contrary would mark a significant departure from decades of well-settled precedent." *Wright*, 2025 WL 1683642, at \*3.

The DOL agrees that Plaintiffs' theory is at complete odds with ERISA. As it recently explained in its amicus brief to the Ninth Circuit supporting the *Hutchins II* dismissal:

> The established understanding for several decades has been that defined contribution plans . . . may allocate forfeited employer contributions to pay benefits for remaining participants rather than using those funds to defray administrative expenses. . . . The Secretary has a substantial interest in fostering established standards of conduct for fiduciaries by clarifying the Secretary's view that a fiduciary's use of forfeited employer contributions in the manner alleged in this case, without more, would not violate ERISA.

Brief of the U.S. Secretary of Labor as Amicus Curiae Supporting Defendant-Appellee at 1, *Hutchins v. HP Inc.*, No. 25-826 (9th Cir. filed Jul. 9, 2025) ("DOL Brief").

***Second***, Plaintiffs' forfeiture theory would "'extend the protection of ERISA beyond its statutory framework.'" *Estay*, 2025 WL 2644782, at \*3 (quoting *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024) ("*Hutchins I*")). As the Northern District of Texas explained when dismissing forfeiture claims like those at issue here, "the plaintiffs' theory would effectively require forfeiture funds to be used for administrative expenses and would create an additional benefit to participants not contemplated in their plans." *Coca-Cola*, 2025 WL 3171326, at \*4 (following *Estay*). Nothing in ERISA requires that forfeitures be directed to plan expenses. *Id*.; *Estay*, 2025 WL 2644782, at \*3-4 ("ERISA does not . . . 'create an exclusive duty to *maximize* pecuniary benefits.'" (quoting *Collins v. Pension & Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279, 1282 (9th Cir. 1998))). Indeed, "[n]othing in

8

ERISA requires employers to establish" 401(k) plans, much less make contributions or pay plan expenses. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). As such, Plaintiffs fail to allege a breach of the duty of loyalty:

> In short, ERISA's goal is to "ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." That goal was met here. ERISA and the Plan do not guarantee Plaintiffs the additional benefits they were never promised but nonetheless seek. Accordingly, the Court dismisses the plaintiffs' breach of loyalty claim.

*Coca-Cola*, 2025 WL 3171326, at *4 (quoting *Spink*, 517 U.S. at 887).

Allowing Plaintiffs to alter ERISA's fiduciary obligations and impose retroactive liability would be contrary to Congress's intent "'to create a system that is [not] so complex that . . . litigation expenses[] unduly discourage employers from offering . . . [benefit] plans in the first place.'" *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)). And it would amount to the court adding into ERISA that which Congress did not intend, which the Supreme Court cautioned courts against. *Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 147 (1985) ("We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.").

***Third***, Plaintiffs fail to plead any nonconclusory allegations that raise an inference of disloyalty. The Supreme Court has instructed that a breach of fiduciary duty depends on context. *Hughes*, 595 U.S. at 173. Flouting that guidance, Plaintiffs assert that using forfeitures to offset employer contributions is *per se* a violation of ERISA. *See, e.g.*, FAC ¶¶ 108, 129, and 130. For good reason, numerous courts and the DOL, in rejecting forfeiture claims, have determined that such broad, conclusory allegations cannot support a claim for disloyalty. *See, e.g.*, *id.*; *Wright*, 2025 WL 1683642, at *5. Plaintiffs' categorical approach ignores other factors relevant to fiduciary decision-making, and that favor SEI's approach, such as ensuring "the participants timely received the matching contributions they were owed under the Plan," and whether diverting forfeitures to

9

Plan administrative expenses would potentially jeopardize other "contractually promised benefits" (*e.g.*, contributions). DOL Brief at 20-22; *see id.* at 16-17.

Instead of alleging facts with any specificity, "Plaintiff[s] [are] unable to point to any circumstances rendering the case unique among the countless ERISA plans permitting the same use of forfeitures." *Hutchins II*, 767 F. Supp. 3d at 927. In the absence of such specific allegations, it is implausible that Defendants failed to act in participants' best interests, especially given that: (1) the forfeitures remained in the Plan for their benefit and (2) the Plan expressly authorized allocation of forfeitures to employer contributions. *Coca-Cola*, 2025 WL 3171326, at *5 ("It is undisputed that Coca-Cola used the forfeitures to the ultimate benefit of the plaintiffs because they were used to pay its contributions directly to plan participants. And, as other courts have held, that forecloses a violation of the duty of loyalty absent specific allegations."); DOL Brief, at 15 ("the mere fact that [a plan] decided to use Plan forfeitures to fund matching contribution benefits—an option explicitly granted by the Plan document and the proposed Treasury regulation—does not state a plausible claim for breach.").

*Finally*, the Plan Document specifically grants the Plan fiduciaries the discretion to apply forfeitures to offset employer contributions. Compl. ¶ 73. As courts have recognized, when the Plan Document specifically affords such discretion, it is not disloyal for fiduciaries to exercise precisely such discretion—especially where, as here, the funds are paid to plan participants. *See Wright*, 2025 WL 1683642, at *5 (plaintiffs failed to state a forfeiture claim, "especially where, as here, it is undisputed that the terms of the Plan give Defendants discretion to use forfeitures to reduce their own contributions"); *Fumich*, 2025 WL 2399134, at *7 (holding that because "the Plan expressly stated that "[a]ll forfeited amounts may be used . . . *to reduce the applicable Employer's future contributions*[,] . . . [t]he text of the Plan is therefore fatal to Plaintiffs' allegations"); *Barragan*, 2025 WL 2383652, at *4 ("the Court fails to see how selection of an

10

option afforded to Honeywell in its discretion, without more, constitutes a conflict of interest" (internal quotation removed)). Here, the same is true: the Plan's text compels dismissal.

### b. Plaintiffs do not state an anti-inurement claim (Count III).

Plaintiffs wrongly maintain that Defendants' forfeiture allocations violated ERISA's anti-inurement provision, under which plan assets may not inure to the benefit of the employer. *See* Compl. ¶¶ 170-75. Courts considering similar assertions have overwhelmingly rejected them for two reasons relevant here: (1) Plaintiffs do not (because they cannot) allege that Plan assets left the Plan and (2) Plaintiffs allege only an incidental benefit to SEI, which does not violate ERISA.[4]

***First,*** a viable anti-inurement claim requires as a threshold ***the removal*** of plan assets ***from*** a plan. *See Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992). Reallocating assets ***within*** a plan cannot support an anti-inurement claim. *See Holliday v. Xerox Corp.*, 732 F.2d 548, 550–51 (6th Cir. 1984). As courts have repeatedly concluded, allocating forfeitures as other employer contributions is simply allocating plan assets from one participant to another therein—the assets do not leave the plan. *See, e.g.*, *Hutchins I*, 737 F. Supp. 3d at 866 (dismissing claim "because the forfeited amounts . . . do not leave the Plan trust fund and are used to pay pension benefits to Plan participants"); *Barragan*, 2024 WL 5165330, at *6 (dismissing where "forfeited amounts do not leave the Plan and are used to satisfy Honeywell's obligations according to the Plan[]"). Here, Plaintiffs do not allege that forfeited amounts ever leave the Plan, and instead allege the opposite. *See, e.g.*, FAC ¶ 107 (alleging that SEI used forfeitures to "offset the Company's contributions ***to the Plan***" (emphasis added)). The absence of

---

[4] *See, e.g.*, *Madrigal*, 2025 WL 1299002, at *5–6; *Steen*, 2025 WL 2420725, at *5–6; *Hutchins I*, 737 F. Supp. 3d at 864–67; *Naylor*, 2024 WL 4112322, at *7 (dismissed with prejudice); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL 4508450, at *10 (S.D. Cal. Sept. 19, 2024); *Barragan*, 2024 WL 5165330, at *6; *Sievert*, 780 F. Supp. 3d at 879–80 (dismissed with prejudice); *Wright*, 2025 WL 1683642, at *6; *Matula*, 2025 WL 1707878, at *2, 4; *Middleton*, 2025 WL 2229959, at *17; *Fumich*, 2025 WL 2399134, at *7–8; *Cano*, 2025 WL 2589567, at *6.

allegations that "any of the forfeited assets at issue ever left the Plan" "dooms" Plaintiffs' claim. *Wright*, 2025 WL 1683642, at \*6.

***Second****,* Plaintiffs fail to state an anti-inurement claim because SEI received, at most, an incidental benefit from the transaction. In *Hughes Aircraft Co. v. Jacobson*, the Supreme Court held that ERISA does not prohibit actions that are otherwise lawful simply because they might benefit the employer indirectly. 525 U.S. 432, 445–46 (1999) (finding lower labor costs and other "incidental benefits" are not a violation of ERISA). Here, the use of forfeitures as employer contributions does not violate the anti-inurement provision because "the benefit that [the employer receives] is incidental to the payment of . . . benefits." *Hutchins I*, 737 F. Supp. 3d at 866 (dismissing claim); *Dimou*, 2024 WL 4508450, at \*10 (citing *Hutchins I* and dismissing anti-inurement claim based on forfeiture allocations where the Plaintiff fails to allege use "of plan assets for the benefit of anyone other than the Plan participants"). Plaintiffs do not—and cannot— allege that the forfeited amounts go to anything other than Plan participants. To be sure, Plaintiffs allege that SEI receives an indirect benefit from the allocations, but any such benefit is "incidental to the payment of pension benefits" and no obstacle to the allocations Plaintiffs challenge. *Hutchins I*, 737 F. Supp. 3d at 866; *Middleton*, 2025 WL 2229959, at \*17 (dismissing anti-inurement claim where "Plaintiffs simply allege that because the forfeitures reduced the amount Defendants had to contribute, there was an incidental benefit to Defendants," and "[y]et, the participants of the Plans still received the benefits"). Count III, therefore, should be dismissed.

## II. Plaintiffs fail to plausibly allege a prohibited transaction with respect to the Plan's recordkeeper (Count I).

Plaintiffs wrongly allege in Count I that by engaging Alight as the Plan's recordkeeper, Defendants violated ERISA's prohibited-transaction rule in 29 U.S.C. § 1106(a). That fails for three, independent reasons.

***First****,* the rule on which Plaintiffs rely prohibits certain transactions between a plan and

"party in interest." *See* 29 U.S.C. § 1106(a); FAC ¶¶ 38-39. But Plaintiffs fail to plead a relevant "party in interest." As applicable here, ERISA defines a "party in interest" to be any "person providing services to [the] plan." 29 U.S.C. § 1002(14)(B). And as the Fifth Circuit explained, "'a person providing services to the plan' is limited to entities that have already begun providing services to the plan at issue," and thus, an initial contract (which does not involve a person *already* providing services to the plan) cannot support a prohibited transaction claim. *D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins.*, 88 F.4th 602, 610 (5th Cir. 2023); *see Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021) (same); *Sweda v. Univ. of Penn.*, 923 F.3d 320, 338-39 (3d Cir. 2019) (same). But that is what Plaintiffs contend: "During the Class Period, Defendants entered into a contract with Alight to provide RKA [i.e., recordkeeping] services and managed account services to the Plan." FAC ¶ 66.

> The Fifth Circuit explained the rationale for this rule:

> Congress defined 'party in interest' to encompass those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries. . . . When a party does not have a preexisting relationship with a plan, there is less risk that a fiduciary would show such party favoritism over the plan's beneficiaries. In line with this reasoning, the Third and Tenth Circuits have held that 'a person providing services to such plan' includes only providers with a preexisting relationship with a plan.

*D.L. Markham DDS,* 88 F.4th at 610 (quoting *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 125-26 (3d Cir. 2013).

Here, Plaintiffs allege only an initial contract between the Plan and Alight—precisely what the Fifth Circuit (as well as the Third and Tenth Circuits) have rejected as insufficient to state a claim for a prohibited transaction. As Alight is not a party-in-interest, Count I fails.

In response, Plaintiffs allege that an Auditors' Report referred to Alight as a party-in-interest. FAC ¶ 69. But this does not alter the relevant facts, i.e., it does not alter the FAC's allegations that establish when Alight was hired.  FAC ¶ 66. Nor does this alter the relevant law in

13

the Fifth Circuit, *i.e.*, that a vendor is not a party-in-interest, subject to the Section 1106(a) prohibited transactions rules, at the time that it is hired. *D.L. Markham DDS,* 88 F.4th at 610. Thus, the Auditors' Report is not dispositive of this issue. The statement quoted from the Auditors' Report is, moreover, precisely the type of conclusory allegation that carries no weight on a motion to dismiss. *Kopp v. Klein*, 894 F.3d 214, 218-19 & n.16 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) ("We do not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005))). Doubly so here, because the conclusion being offered is legal. *Twombly,* 550 U.S. at 570 (court not obliged to accept legal conclusions at true). Nor do Plaintiffs provide any context or foundation for that conclusion; they do not, for example, show the auditors had any relevant legal training, and neither do they explain the purpose or meaning of the auditor's statement.

     ***Second***, hiring a recordkeeper is not deemed a prohibited transaction under Section 1106(a)(1) because, as numerous courts have held, "[i]t would be nonsensical to read § 1106(a)(1) to prohibit transactions for services that are essential for defined contribution plans, such as recordkeeping and administrative services." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 585 (7th Cir. 2022); *Sweda v. Univ. of Pa.*, 923 F.3d 320, 337 (3d Cir. 2019) ("Reading § 1106(a)(1) as a per se rule barring all transactions between a plan and party in interest would miss the balance that Congress struck in ERISA, because it would expose fiduciaries to liability for every transaction whereby services are rendered to the plan"); *Chavez v. Plan Benefit Servs., Inc.*, 2018 WL 3016925, at *4 (W.D. Tex. June 15, 2018) ("it would be nonsensical to read § 1106(a)(1)(A)'s prescription on the transfer of property to include . . . fee payments . . . to recordkeepers, as such an interpretation would mean plan beneficiaries and participants can make out a prima facie case for prohibited transactions every time a recordkeeper is compensated for its services" (cleaned up;

14

citations and quotations omitted)). Rather, the prohibited transaction rules are aimed at "uses of plan assets that" unlike hiring a necessary service provider like a recordkeeper, "are potentially harmful to the plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996). Here, the FAC alleges that recordkeeping was an "essential" plan service. FAC ¶¶ 71-73.  As such, payments to Alight for such services do not fall within the scope of transactions prohibited by Section 1106(a).

*Finally*, "[d]istrict courts must also, consistent with Article III standing, dismiss suits that allege a prohibited transaction occurred but fail to identify an injury." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 708 (2025). Here, Plaintiffs fail to allege any injury; that is, Plaintiffs fail to allege that they overpaid for any service Alight provided. To begin, as the FAC concedes, Alight provided recordkeeping services *and* managed account services. FAC ¶¶ 14, 79. And thus, the reason SEI purportedly paid more to Alight than other plans paid to their providers (as shown in the chart at FAC ¶ 93), is that "the total reported RKA [i.e., recordkeeping] amount in the [Siemens] Form 5500s *included the Plan's managed account service*." FAC ¶ 96 (emphasis added).

Plaintiffs offer two arguments why Alight's provision of managed account services supposedly "did not justify any material increase to the RKA costs to the Plan," FAC ¶ 96, but neither argument suffices to show a loss, *i.e.*, that Plaintiffs overpaid for managed account services. To begin with, the FAC offers the conclusory assertion that "Defendants could have offered the exact same managed account services at a lower cost by using a different managed account service provider." FAC ¶ 97. But such conclusory assertions are not sufficient to survive a motion to dismiss. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). That is particularly true where the allegation is contradicted by other, more specific allegations. *See Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 872 n.8 (S.D. Tex. 2020) ("'Where [a] Plaintiffs' own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the

15

contradictory allegations in the pleadings as true in deciding a motion to dismiss.'" (quoting *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016)). As the FAC explains, "[p]articipants who sign up for managed account services are generally charged an annual fee that is a percentage of the participant's account balance regardless of which investment approach they choose," FAC ¶ 85, and, "managed account services have historically been expensive compared to other alternatives," FAC ¶ 88. This undercuts Plaintiffs' naked assertion that another provider would have offered the Plan managed account services for less.

Second, the Complaint asserts a theory courts have rejected, arguing SEI could have used a target date fund ("**TDF**")[5] instead of purchasing managed account services. FAC ¶ 98. Under this reasoning, a plan could never utilize managed account services because a TDF will always be cheaper. This undercuts the fundamental precept of ERISA law that plan fiduciaries are not required to choose the cheapest option. *See Wagner v. Hess Corp.*, 2025 WL 888428, at *11 (N.D. Tex. Mar. 21, 2025) ("Fiduciaries retain 'considerable discretion in choosing their offerings and do not have to pick the lower-cost fund of a certain type' . . ." (quoting *Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022)); *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *Meiners v. Wells Fargo & Co.,* 898 F.3d 820, 823 (8th Cir. 2018). Consequently, courts have routinely dismissed claims arguing a plan must utilize a TDF instead of managed account services. *See, e.g., Dionicio v. U.S. Bancorp.*, 2024 WL 1216519, at *5 n.5 (D. Minn. Mar. 21, 2024) (dismissing claim based on theory that "any managed-account-service fees are excessive because such services provide no marginal value over similarly performing, but lower cost, target-date funds that are also available to Plan participants"); *Baumeister v. Exelon Corp.*, 2023 WL 6388064,

---

[5] A TDF is an all-in-one investment fund that automatically adjusts stocks, bonds, and other investments to become more conservative as a target retirement date approaches. *Hall v. Cap. One Fin. Corp.*, 2023 WL 2333304, at *1 (E.D. Va. Mar. 1, 2023).

at *9 (N.D. Ill. Sept. 29, 2023) (dismissing claim and rejecting argument that "the [managed account] service 'added no material value to participants' because the 'asset allocation created by the service was not materially different than the . . . target date option made available to the Plan's Participants at a lower fee'").

Because Plaintiffs have not alleged that they overpaid for Alight's managed account services, they fail to allege an injury, and thus lacks Article III standing. The Court should dismiss Count I.

### III.     Plaintiffs fail to state a claim against SEI

A threshold issue when examining a breach of fiduciary duty claim in the ERISA context is whether the defendant qualifies as an ERISA fiduciary. *Pegram v. Herdrich*, 530 U.S. 211, 222– 23 (2000). "Under ERISA, an entity can become a fiduciary if it (1) is named or designated fiduciary 'in the plan instrument,' . . . or (2) functions as a fiduciary by exercising 'any discretionary authority or discretionary control' over management of the plan or disposition of assets within the plan." *LeBoeuf v. Entergy Corp.*, 2025 WL 1262414, at *3 (5th Cir. May 1, 2025) (quoting 29 U.S.C. § 1102(a)(2), 1002(21)(A)).

Here, Plaintiffs opt for the former, citing SEI's 2023 Form 5500 for the proposition that SEI is "the sponsor and a named fiduciary of the Plan." FAC ¶ 27. The Form 5500, however, confirms SEI is *only* the plan sponsor. *See* ECF No. 21-1, Lakatos Decl., Att. E, 2023 Form 5500; *see also Martinez v. Staten Island Univ. Hosp.*, 2020 WL 13837813, at *4 (E.D.N.Y. June 19, 2020) (holding that "where documents incorporated by reference to the complaint contradict the complaint itself, the Court is neither obligated to reconcile those contradictory allegations nor required to take those contradictory allegations as true"). Courts routinely hold that being a plan sponsor is insufficient to establish fiduciary status. *See Meznarich v. Morgan Waldron Ins. Mgmt.*, 2012 WL 2367268, at *9 (N.D. Ohio Jun. 21, 2012) (citing *Beck v. PACE Int'l Union*, 551 U.S.

17

96, 101 (2007)); *Rajpurohit v. Becton, Dickinson, & Co.*, 2024 WL 1477652, at *7 (D.N.J. Apr. 5, 2024) ("A plan sponsor is not a fiduciary just because it sponsors a plan."); *McIver v. Metro. Life Ins.*, 2022 WL 3013199, at *3 n.1 (C.D. Cal. May 23, 2022) ("sponsorship of a plan is not sufficient by itself to confer fiduciary status").

To the extent the Complaint could be read to suggest SEI had discretionary control of or authority over the Plan—*e.g.*, "[t]hrough its Board, Siemens appointed the Plan's administrators," FAC ¶ 29—such allegations, which are conclusory and discuss the conduct of *other* defendants such as the Board, do not suffice as to SEI. In *LeBoeuf*, the court affirmed dismissal of an ERISA claim based on nearly identical allegations against the plan sponsor, holding an allegation that the plan sponsor "retained authority and discretion over the manner and methods of communicating with plan participants," was too conclusory to establish the sponsor was a fiduciary, especially where another defendant (there, a committee) had been established and vested with the relevant authority. *LeBoeuf*, 2025 WL 1262414, at *3. The same is true here. SEI is merely the plan sponsor, and other defendants (the Board, the Committees) have been established to operate the Plan. SEI should be dismissed from this lawsuit.

## CONCLUSION

For all the foregoing reasons, the Complaint should be dismissed in its entirety.

18

Dated: December 15, 2025

**MAYER BROWN LLP**

/s/ *Charles S. Kelley*
Charles S. Kelley
TX State Bar No, 11199580
700 Louisiana St., Suite 3400
Houston, TX 77002
Telephone: (713) 238-2634
Email: ckelley@mayerbrown.com

Alex Lakatos (*pro hac vice*)
E. Brantley Webb (*pro hac vice*)
**MAYER BROWN LLP**
1999 K St. NW
Washington, DC 20006
Phone: (202) 263-3000
Email: alakatos@mayerbrown.com
        bwebb@mayerbrown.com

Nancy Ross (*pro hac vice pending*)
**MAYER BROWN LLP**
71 S. Wacker Dr.
Chicago, IL 60606
Phone: (312) 782-0600
Email: nross@mayerbrown.com

COUNSEL FOR DEFENDANTS SIEMENS
ENERGY, INC., THE BOARD OF DIRECTORS
OF SIEMENS ENERGY, INC., THE SIEMENS
ENERGY, INC. ADMINISTRATIVE
COMMITTEE, AND THE SIEMENS ENERGY,
INC. INVESTMENT COMMITTEE

## CERTIFICATE OF SERVICE

I certify that on December 15, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which automatically sends notification of such filing to all attorneys of record.

/s/ *Charles S. Kelley*
Charles S. Kelley

19